DEFENDERS OF WILDLIFE et al., Plaintiffs,

v.

Cecil D. ANDRUS et al., Defendants.

Civ. A. No. 77–0212.

United States District Court, District of Columbia.

Jan. 10, 1978.

Thomas B. Stoel, Jr., Washington, D. C., for plaintiffs.

John E. Lindskold, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

### BACKGROUND

On February 14, 1977, this Court granted plaintiffs' motion for a preliminary injunction. Defendants were thus "enjoined from permitting the aerial killing of wolves by persons acting as agents or permittees of the State of Alaska on lands in Alaska Game Management Units 23, 24, and 26 which are under the jurisdiction of the Bureau of Land Management of the Department of the Interior," and they were ordered to take all steps necessary to prevent such killing to the extent of their authority under the Federal Land Policy and Management Act of 1976 (BLM Organic Act), 43 U.S.C. §§ 1701–1782 (Supp. V 1975). The Court stated that plaintiffs had shown "a very substantial likelihood of success on the merits of their claim that defendants have violated the requirements by not preparing an environmental impact statement prior to allowing the wolf kill to occur on federal lands." Slip op. at 16.

On the same day, the Court also denied defendants' motion to transfer the case to the United States District Court for the District of Alaska. The Court determined that such a transfer would impose significant hardships on plaintiffs, adequate relief could be granted without the presence of Alaska as a party, and the interests of justice would be best served by denying the motion to transfer. Slip op. at 5, 20.

On March 4, 1977, the State of Alaska and the Maneluk Association, seeking to enjoin the Department of the Interior from preventing the State of Alaska from carrying out the wolf kill program, filed a motion for a temporary restraining order and preliminary injunction in the United States District Court for the District of Alaska. Plaintiff environmental organizations in the instant case intervened as defendants in the Alaska case. While the Alaska court denied the motion for a preliminary injunction on the grounds that such an order would be in direct conflict with this Court's order and hence would subject the Secretary to conflicting orders, it indicated that the issues before the Court were ripe for summary judgment. *State of Alaska v. Andrus,* No. A77–51 (D.Alas. March 16, 1977).

The State of Alaska then filed a motion for summary judgment, seeking a declaration with respect to the authority of the Secretary of the Interior to halt the wolf kill and the applicability of NEPA to the wolf kill program. The Alaska court entered final judgment on April 11, 1977. The court determined that the Secretary did have authority to halt the wolf kill under the BLM Organic Act. Opinion of April 11, 1977 at 4–6. However, the court held that it was not necessary for the Secretary to prepare an environmental impact statement under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–4335 (1970), because acquiescence in the wolf kill program by the State of Alaska did not constitute a major federal action within the meaning of NEPA. *Id.* at 6–9. Finally, the court denied intervenors' motion to transfer venue to the District Court for the District of Columbia. It recognized that it would be more efficient and orderly if this Court, having already issued a preliminary injunction, decided the issues then before the Alaska court. However, it emphatically stated that the proper forum was Alaska, because the problems, involving Alaska lands, were essentially local in nature, and Alaska was seriously affected by the District of Columbia Court order. *Id.* at 9–10.

This case is now before the Court on defendants' motion to dismiss on the grounds of (1) failure to join indispensable

parties under Fed.R.Civ.P. 19 and that (2) the action is barred by the doctrine of *res judicata*. For the reasons set forth below, the Court denies defendants' motion to dismiss.

## MERITS

A. *Failure to Join Indispensable Parties.*

■ While Fed.R.Civ.P. 19 affords a court considerable discretion in determining whether a party is indispensable to the litigation, the Court must follow a two-step analysis. It must initially determine whether the party qualifies under the tests set forth in 19(a) as one of those parties which should be joined. Second, if such a joinder is not feasible, the Court must determine whether "in equity or good conscience" the action should be dismissed or go forward without the absent party.

Clearly, the interests of the State of Alaska are sufficient to satisfy one of the tests set forth in Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The determination whether the State of Alaska is an indispensable party is more difficult. Rule 19(b) sets forth the factors to be considered:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions, in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;

third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The Supreme Court, in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11, 88 S.Ct. 733, 737, 19 L.Ed.2d 936 (1968), has found that "Rule 19(b) suggests four 'interests' that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled": (1) the interest of the plaintiff in having a forum; (2) the interest of the defendant in avoiding inconsistent relief or multiple litigation; (3) the interest of the absent party in protecting his rights; and (4) "the interest of the courts and the public in complete, consistent, and efficient settlement of the controversy," *id.* at 111, 88 S.Ct. at 739.

1. *Plaintiff's Interest in Having a Forum.*

Dismissal of this case would seriously hamper plaintiffs' efforts to pursue this cause of action. Relegation of the plaintiffs to an appeal of the Alaska court decision in the Ninth Circuit would be inadequate, both because it would not be timely and plaintiffs' limited financial resources would make it difficult to pursue an appeal. The claim of financial hardship is not inconsistent with plaintiffs' intervention in the Alaska case. Plaintiffs intervened in Alaska solely to protect the relief granted by this Court. Moreover, plaintiffs moved to transfer the Alaska case to this Court, but the motion was denied.

2. *Inconsistent Relief and Multiple Litigation.*

In light of the final judgment entered by the Alaska court, the only potential inconsistency between the judgments of the two courts would be in the interpretation of the applicability of NEPA to the instant case. Because the Alaska court did not order the Secretary to desist from preventing the wolf kill, defendants will not be subject to conflicting injunctions.

Failure to dismiss the instant case will compel the defendants to litigate in two jurisdictions. However, defendants' case is rendered less compelling upon consideration that defendants did not object to the burden of multiple litigation when the State of Alaska filed its suit in the Alaska district court after proceedings had been commenced in this Court.

### 3. Interest of the Absent Party in Protecting Its Rights.

While not technically bound by this Court's injunctive order, the State of Alaska, as a practical matter, is significantly affected. Yet, even in its absence, the State of Alaska is not wholly unprotected. Alaska's position in this matter is similar to that of the defendants. In the Alaska litigation, the State of Alaska attached to its motion for summary judgment on the issue of NEPA applicability the federal defendants' briefing of the issue for this Court. Defendants adopted this same position in the Alaska litigation. Indeed, it appears that the defendants played a passive role throughout the Alaska litigation. Additional evidence of the similarity of these parties' interests is the State's admission that it delayed filing the Alaska action in the hope that defendants would move for a reconsideration in this Court. See Plaintiff's Memorandum in Support of Motion for Temporary Restraining Order at 6, *State of Alaska v. Andrus.*

■ Moreover, the State of Alaska could have intervened in the action in this Court. It chose not to intervene, subsequently filed a suit in another jurisdiction, and now seeks to penalize plaintiffs for intervening in the Alaska litigation to protect the judgment of this Court. Indeed, the Supreme Court has suggested that such action may well prejudice the absent party: A party that fails to intervene when he is clearly able to do so may be bound by a judgment in a case he could have entered as a matter of right. *See Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* at 114, 88 S.Ct. 733.

If defendants' motion to dismiss is denied, they can still protect their interests:

Defendants can either pursue an appeal in the Ninth Circuit or intervene in the action in this Court.

### 4. Interest of the Public in Complete, Consistent, and Efficient Settlement of Controversies.

■ While the failure to dismiss the case will perpetuate two lawsuits, the equities outweigh such inefficiency. Courts have not reacted favorably to behavior similar to defendants':

> [T]he law is developing a critical eye toward persons who, knowing that a pending action is designed to stabilize legal relationships that concern them, deliberately stay out of that litigation although they could easily enter it.

*Western Shoshone Legal Defense & Educ. Ass'n v. United States,* 531 F.2d 495, 502, 209 Ct.Cl. 43 (1976). Finally, federal courts have been very reticent to dismiss on the grounds of failure to join an indispensable party, except when serious prejudice or inefficiency will result. *See Provident Tradesmens, supra; Mallis v. Federal Deposit Ins. Corp.,* 407 F.Supp. 7 (D.C.N.Y. 1975); C. Wright & A. Miller, 7 *Federal Practice and Procedure* 83 (1972).

■ Upon consideration of the above interests, the Court concludes that defendants' motion to dismiss for failure to join an indispensable party should be denied. This Court addressed many of the 19(b) considerations in its earlier denial of defendants' motion for change of venue. In denying this motion, this Court, while not addressing all of the above-stated factors fully, did consider several of these interests. Specifically, the Court stated that while the interests of the State of Alaska would be affected by a grant of preliminary injunctive relief, that injury "is not substantial enough to warrant a denial of the requested relief." Slip op. at 20. Since the Court determined that the federal defendants had authority to prevent the wolf kill, adequate relief could be granted in the absence of Alaska as a party. The Court noted that its Order would neither affect the ability of Alaska to conduct the wolf kill program on

its own land nor permanently prevent the wolf control program from proceeding on lands under federal jurisdiction. The resultant inconvenience to Alaska was deemed outweighed by the public interest. Slip op. at 20. Finally, the Court expressed its concern that compelling plaintiffs to litigate in Alaska "would impose pecuniary and other hardships on plaintiffs, such that they may be unable to pursue this action. . . . " Slip op. at 5. Moreover, if the case is dismissed, plaintiffs may well be unable to obtain timely relief elsewhere and would be penalized for attempting to protect this Court's judgment in the Alaska court. The State of Alaska would in effect be rewarded for its decision to stay out of the instant suit and to file a subsequent suit in another jurisdiction.

### B. *Res Judicata.*

Defendants claim that the final judgment rendered by the United States District Court for the District of Alaska is conclusive of the rights of the parties and operates as a bar to further proceedings in this case. Defendants urge the application of *res judicata*, since identical parties and the same cause of action are involved. The Alaska court itself suggested the application of a preclusive doctrine to the issues before this Court:

> It is assumed that as the issues in this action are the same as those in the Washington, D.C. case and the intervenors and defendants herein are the only parties to the action that the appropriate Washington D.C. court will give this judgment its proper *res judicata* and collateral estoppel affect [*sic*].

Opinion of April 11, 1977 at 10.

■ If a preclusive doctrine is applicable to the instant case, collateral estoppel rather than *res judicata* would be appropriate. Although the case involves the same set of facts, parties, and legal issues, different causes of action are involved: The plaintiffs in each case seek to protect different interests and remedies. The characterization of the doctrine as collateral es-

toppel rather than *res judicata* is significant, since a court has more discretion in determining whether or not to apply collateral estoppel than *res judicata.*

■ A party who claims the benefit of collateral estoppel must show that the issue of fact or law was, in the prior action, (1) actually and fully litigated by the parties, (2) finally determined by the court, and (3) necessarily so determined. The party against whom collateral estoppel is invoked must have been a party to the former action. *See* F. James, Jr., *Civil Procedure* 576 (1965).

It appears that these elements are satisfied. Plaintiffs' claims to the contrary notwithstanding, the issue of NEPA applicability was litigated sufficiently in the prior case to permit collateral estoppel to be invoked against plaintiffs in this case. It is immaterial that plaintiff State of Alaska and federal defendants did not differ on the NEPA issue. Environmental plaintiffs, defendant-intervenors in the Alaska case, briefed the issue and responded to the State's summary judgment motion in the Alaska case. The party claiming the benefit of collateral estoppel and the party against whom collateral estoppel is being invoked adopted adversarial positions on the NEPA issue.

■ "Actual litigation" does not necessarily require that each party respond to the other party; it is sufficient that the issue is in fact raised, and each party has an opportunity to argue its position in some form. The fact that the federal defendants and the defendant-intervenors filed their responses to the State's motion for summary judgment on the last possible filing date, thus precluding plaintiffs and defendants in this case from responding to each other on the NEPA issue, is therefore not relevant.

Thus, the NEPA issue was fully litigated in the Alaska court. The other elements sufficient to invoke collateral estoppel are also satisfied in this case: The NEPA issue was finally and necessarily determined in

the prior case in which plaintiffs in this case were parties to the litigation.

 Although collateral estoppel could be applied, it would be inequitable to invoke the doctrine in the instant case. Indeed, the *Restatement of Judgments* provides authority for denying its preclusive effect under certain circumstances:

> Where a question of law essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same subject matter or transaction; *and in any event it is not conclusive if injustice would result.*

ALI, *Restatement of Judgments*, § 70, at 318–19 (1942) (emphasis added). Many commentators note that policy considerations dictate that collateral estoppel is not applied as broadly or rigidly as *res judicata,* since it is often difficult to foresee in the first action the extent of possible use in subsequent actions. *See, e. g.,* F. James, Jr., *supra,* at 576–77. There are several well-recognized exceptions to the rule of collateral estoppel. For example, collateral estoppel is not applied when the burden of persuasion with respect to the issue in the second action is significantly heavier than in the first action. *See id.* at 607. While a general equitable exception has not been established, there is authority for not invoking collateral estoppel if injustice would result. *See* ALI, *Restatement of Judgments,* § 70; Polasky, *Collateral Estoppel— Effects of Prior Litigation,* 39 Iowa L.Rev. 217, 221 (1954).

It would be particularly inequitable to apply collateral estoppel against the plaintiffs in this case. Plaintiffs were the first to file suit on this matter. The State of Alaska, rather than intervene in the matter before this Court as it could have, filed a separate suit in Alaska. By invoking collateral estoppel, defendants attempt to penalize plaintiffs for intervening in the Alaska court to protect the relief granted by this Court.

Finally, the application of collateral estoppel in the present case would set a dangerous precedent. When one party is seeking to compel the federal government to act and another is seeking to prevent the government from acting, the latter party may stay out of the litigation initiated by the former party and file suit against the government in another jurisdiction. · If the government does not actively contest the issue, as in the instant case, then the initial plaintiffs are confronted with a dilemma— both courses of action open to them are unsatisfactory. If they do intervene in the subsequent litigation, *res judicata* or collateral estoppel may be invoked against them. If, however, they do not intervene and the government does not actively contest the entry of a conflicting order, the relief obtained (and sought to be obtained) by plaintiffs in the initial action will be effectively nullified.

Thus, the Court concludes that collateral estoppel should not be applied against the plaintiffs. While collateral estoppel technically applies, its application would be inequitable in the instant case and would set a dangerous precedent in cases in which the federal government is a defendant.

## CONCLUSION

For the reasons stated, this Court holds that neither failure to join an indispensable party nor *res judicata* compel dismissal of this case. Accordingly, the Court denies defendants' motion to dismiss.