**PUBLIC CITIZEN, INC., et al., Appellants,**

v.

**William E. SIMON, Secretary of the Treasury, Appellee.**

**No. 74–2025.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1975.

Decided June 25, 1976.

---

Girardeau A. Spann, Washington, D. C., for appellants. Alan B. Morrison, Washington, D. C., was on the brief for appellants.

David J. Anderson, Atty., Dept. of Justice, Washington, D. C., with whom Carla A. Hills, Asst. Atty. Gen., New York City, at the time the brief was filed, Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellee. Morton Hollander, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellee.

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. There is some question as to whether Public Citizen, Inc. is a federal taxpayer for purposes of this suit. Appellants' counsel asserted at the argument that although Public Citizen is a non-profit organization it pays social security taxes, but there is no averment in the complaint or evidence in the record that it pays general federal taxes. Appellee does not challenge the bona fides of Public Citizen's claim to taxpayer

---

Before LEVENTHAL and MacKINNON, Circuit Judges and McMILLAN,* United States District Judge for the Western District of North Carolina.

Opinion for the Court filed by Circuit Judge LEVENTHAL.

Dissenting opinion filed by District Judge McMILLAN.

LEVENTHAL, Circuit Judge:

This appeal raises the question whether taxpayers have standing as taxpayers, without congressional authorization of their suit, to challenge executive spending claimed to be in derogation of constitutional and statutory strictures. The District Court deemed the action barred by *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), and *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). We agree.

## I. PARTIES AND PROCEEDINGS BELOW

Appellants are a taxpaying non-profit organization supported by contributions and a prominent taxpayer-public causes advocate. They allege injury as taxpayers.[1] Their action is brought against the Secretary of the Treasury, sued in his official capacity. Appellants seek declaratory and injunctive relief to require appellee "to take appropriate action to recover all salaries paid to persons on the White House Staff while they were devoting substantially all of their working time to the 1972 Presidential election campaign, rather than to the official business for which their positions are authorized."[2] Asserting that Congress has made

---

status. If the issue were critical, we would remand to the District Court to determine whether Public Citizen is in fact "a taxpaying non-profit organization," *see Protestants and Other Americans, etc. v. Watson,* 132 U.S.App. D.C. 329, 330, 407 F.2d 1264, 1265 (1968). A remand is unnecessary here because of the presence of co-appellant Nader as an individual taxpayer.

2. J.A. 4.

no appropriation for substantial on-working time political activity by members of the White House Staff, appellants allege that this activity violated the Appropriations Clause of the Constitution[3] and 31 U.S.C. § 628,[4] and that appellee is under a duty implied from these provisions to ensure that all congressional appropriations are being used for their designated purposes, and to recover the misspent appropriations for the use and benefit of the United States Treasury.[5]

On November 14, 1972 appellants instituted this action in District Court. Shortly after the filing of the complaint, appellee moved to dismiss for lack of standing. The District Court denied the motion without opinion on March 8, 1973. Appellants then proceeded to take discovery. Following the conclusion of discovery, appellee renewed his motion to dismiss, which the District Court granted on September 27, 1974. This appeal followed.

## II. SUPREME COURT PRECEDENTS ON TAXPAYER STANDING

Appellants hinge their standing to sue on a proposed extension of *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), to permit taxpayer challenges to executive spending. In *Flast* the Court modified the doctrine of standing which, since *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), had barred suits by federal taxpayers to enjoin allegedly unconstitutional expenditures. *Flast,* in turn, has been accorded a restrictive reading in the recent decisions of *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), and *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). The viability of appellants' proposed extension turns on an appreciation of this doctrinal development, which we now set forth.

*Frothingham,* involving a Tenth Amendment challenge to federal legislation providing grants to the States for participation in programs to reduce infant and maternal mortality, erected what appeared to at the time to be an absolute barrier to federal taxpayer suits. It did so on a rationale which, although interlaced with non-constitutional policy considerations, was grounded in the Article III concept that the federal judicial power may be invoked only in a genuine "case or controversy." The Court held that a federal taxpayer, unlike his state counterpart, has a "comparatively minute and indeterminable interest" in the moneys of the Treasury, such that injury to him occasioned by obnoxious legislation is indistinguishable from that suffered by the general public. To permit such suits, the Court feared, would expose to taxpayer challenge every appropriation act whose administration requires the outlay of money, and would thrust the Judiciary into conflict with the other branches of government without the direct, particularized harm that

---

3. No Money shall be drawn from the Treasury, but in Consequence of Appropriation made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.

   Art. I, § 9, cl. 7.

4. Except as otherwise provided by law, sums appropriated for the various branches of expenditure in the public service shall be applied solely to the objects for which they are respectively made, and for no others.

5. Appellants requested the following relief: (1) a declaration that appellee was not authorized to pay the salaries of persons who had devoted a substantial part of their working time to the Nixon reelection campaign; (2) an injunction directing appellee to investigate and prepare a report on such persons and the amount paid on salaries while they were working on the campaign, and to take the necessary action to recover such salaries; (3) such further relief as may be just and proper including the appointment of a Special Assistant Attorney General in the event appellee and the Attorney General of the United States fail to take effective action within a reasonable time; (4) an injunction as to future payments to, and use of federal property or facilities by, "any person who is devoting substantially all of his/her working time to any political campaign"; and (5) costs. J.A. 7–8.

lends legitimacy and urgency to the call on the courts to act.[6]

*Frothingham* remained undisturbed for forty-five years. It generated considerable confusion as to whether it stated a constitutional requirement for Article III standing or simply a policy of judicial self-restraint.[7] Reexamination finally came in *Flast,* which involved a challenge to a federal statute providing disbursement of federal funds to finance secular instruction in religious schools. The Court, per Chief Justice Warren, phrased the issue before it as "whether the Frothingham barrier should be lowered when a taxpayer attacks a federal statute on the ground that it violates the Establishment and Free Exercise Clauses of the First Amendment."[8]

*Flast* answered some of the questions raised by *Frothingham.* It made clear that Article III is not an absolute barrier to taxpayer actions, that the question of standing relates to whether one is "a proper party to maintain the action" and "does not, by its own force, raise separation of powers problems related to improper judicial interference in areas committed to other branches of the Federal Government."[9] Whether taxpayers have standing to challenge the constitutionality of a federal spending program becomes a question of whether "they can demonstrate the necessary stake as taxpayers in the outcome of the litigation to satisfy Article III requirements." This, in turn, requires satisfaction of a two-pronged test:

> First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of ex-

ercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. This requirement is consistent with the limitation imposed upon state-taxpayer standing in federal courts in *Doremus v. Board of Education,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction.[10]

The Court found the first prong satisfied because the challenge was to an exercise by Congress of its spending power, its power under Article I, § 8 "to pay the Debts and provide for the . . . general Welfare of the United States," and because the challenged program involved a substantial[11] expenditure of federal tax funds. It found the second prong satisfied by the allegation that the challenged expenditures violated the Establishment Clause, in light of the Court's gloss on the history of the clause as having been adopted as "a specific bulwark" against the government's employment of its taxing and spending power in

---

6. 262 U.S. at 486–89, 43 S.Ct. 597.

7. *See Flast v. Cohen, supra,* 392 U.S. at 92 & n. 6, 88 S.Ct. 1942.

8. *Id.* at 85, 88 S.Ct. at 1944.

9. *Id.* at 100–01, 88 S.Ct. at 1953.

10. *Id.* at 102–03, 88 S.Ct. at 1954.

11. The Court noted that almost a billion dollars had been appropriated to implement the statute in question. *Id.* at 103 & n. 23, 88 S.Ct. 1942. This court in *Protestants and Other Americans, etc. v. Watson, supra,* note 1, 132 U.S.App.D.C. at 330–31, 407 F.2d at 1265–66, has held that *Flast* requires not only that the challenge be to a spending program but also that the expenditures be "substantial."

support of religion.[12]  *Frothingham* was distinguished as failing the second prong, for the Tenth Amendment claim was an attempt "to assert the States' interest in their legislative prerogatives and not a federal taxpayer's interest in being free of taxing and spending in contravention of specific constitutional limitations imposed upon Congress' taxing and spending power."[13]

Although *Flast's* criteria for taxpayer standing have been subjected to considerable criticism for failing to provide a measurement of the adverse interest of a plaintiff in the outcome,[14] the "nexus" test did restrict the range of taxpayer actions.[15]  It avoided the spectre raised by *Frothingham* of taxpayer use of "a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System."[16]  The Court's 1974 opinions establish the continuing vitality of the *Frothingham* barrier to taxpayer actions and the limited breach effected by *Flast,* by declining to recognize taxpayer standing in cases not satisfying the literal terms of the *Flast* "nexus" test.[17]

In *Richardson* a taxpayer claimed that a statute authorizing the refusal of the Executive Branch to reveal expenditures of the Central Intelligence Agency (CIA) violated the Statement and Account Clause of the Constitution.[18]  The Court denied standing because the taxpayer's "challenge is not addressed to the taxing and spending power, but to the statutes regulating the CIA," and he makes "no claim that appropriated funds are being spent in violation of a 'specific constitutional limitation upon the . . . taxing and spending power. . . .' "[19]  With the conditions of *Flast* not met, the Court deemed the challenge a "generalized grievance" not entitled to invocation of judicial power because of the absence of "any particular concrete injury."[20]

*Schlesinger* was a challenge to executive conduct by a group of anti-war activists who, as citizens and taxpayers, argued that the Pentagon policy which allows members of Congress to retain their status in the Armed Forces Reserves is prohibited by the Incompatibility Clause of the Constitution.[21]  The Court held that plaintiffs "did not chal-

**12.**  392 U.S. at 103–04, 88 S.Ct. 1942.

**13.**  *Id.* at 105, 88 S.Ct. at 1955.

**14.**  Justice Harlan, dissenting in *Flast,* found "[t]he difficulties with these criteria are many and severe, but it is enough for the moment to emphasize that they are not in any sense a measurement of any plaintiff's interest in the outcome of any suit." 392 U.S. at 121–24, 88 S.Ct. at 1964.  Justice Harlan's critique has been seconded by several commentators.  *See, e. g., United States v. Richardson, supra,* 418 U.S. at 183–85, 94 S.Ct. 2940 (Powell, J., concurring); Scott, *Standing in the Supreme Court—A Functional Analysis,* 86 Harv.L.Rev. 645, 661–62 (1973); Davis, *Standing: Taxpayers and Others,* 35 U.Chi.L.Rev. 601, 604–07 (1968).

**15.**  *See* The Supreme Court, 1967 Term, 82 Harv.L.Rev. 63, 230–31 (1968); Scott, *supra* note 14, at 661.

**16.**  392 U.S. at 106, 88 S.Ct. at 1956.

**17.**  The Court subsequently considered a taxpayer standing contention in *Warth v. Seldin,* 422 U.S. 490, 508–10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).  There taxpayer-petitioners claimed

they were suffering economic injury because a suburb's exclusionary zoning practices required them and other residents of the city of Rochester, New York to subsidize housing and essential services for persons of low and moderate income.  The Court rejected the claim as an attempt to assert the rights of third parties, persons of low and moderate income who were excluded by the suburb's zoning from living there.

**18.**  For text, see note 3 *supra.*

**19.**  418 U.S. at 175, 94 S.Ct. at 2945.

**20.**  *Id.* at 176–80, 94 S.Ct. 2940.

**21.**  No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.  Art. I, § 6, cl. 2.

lenge an enactment under Art. I, § 8, but rather the action of the Executive Branch in permitting Members of Congress to retain their reserve status."[22] It dismissed the "citizen standing" ground relied on by the lower court because of the absence of "judicially cognizable injury."[23]

## III. THE ISSUE WHETHER EXECUTIVE SPENDING IS SUBJECT TO TAXPAYER SUIT ON A TEST ANALOGOUS TO *Flast*

The District Court held appellants failed to come within *Flast* because their challenge is to the conduct of the executive branch, and the constitutional provision they invoke is not a specific limitation on the congressional taxing and spending power.[24]

Appellants argue that *Flast* did not announce an exclusive test for all taxpayer suits but merely stated the requirements for such challenges to legislative enactments, and that challenges to executive spending may be posited on an analogous test. Appellants' formulation modifies the language of the *Flast* "nexuses" to require a taxpayer in an "executive spending" case to (1) "establish a logical link between that status and the type of [executive action] attacked," in that the challenge must be directed at executive spending rather than regulatory action involving incidental expenditures; and (2) "show that the chal-

lenged enactment [executive spending] exceeds specific constitutional [or statutory] limitations imposed upon the exercise of the [executive's] spending power and not simply that the [executive action] is generally beyond the powers delegated to [the executive by the Constitution or by statute]." Appellants assert that their challenge to the wrongful diversion of tax revenues by members of the White House Staff establishes a logical nexus between their status and the executive action involved, and their invocation of the Appropriations Clause establishes a specific limitation on the power of the executive to spend on matters not authorized by Congress.[25]

Appellants' proposed test cannot stand in light of *Richardson* and *Schlesinger,* which presented clear invitations to extend *Flast* by analogy in order to broaden the availability of "public actions" by taxpayers to enforce the general mandates of the Constitution. Instead, the Court expressly declined the opportunity to lower the *Frothingham* barrier except for actions that could clear the hurdles set by the express terms of the *Flast* "nexus" test.

The challenge in *Richardson* to the nondisclosure of CIA expenditures was, in the view of the Third Circuit, "integrally related" to taxpayer ability to challenge the CIA appropriations themselves, and this consideration persuaded it to fashion an analogous test for taxpayer actions seeking dis-

---

**22.** 418 U.S. at 228, 94 S.Ct. at 2935.

**23.** *Id.* at 216–27, 94 S.Ct. 2940. From some of the language in the *Richardson-Schlesinger* opinions, particularly the emphasis on the absence of "direct injury," "particular, concrete injury," or "judicially cognizable injury," it would seem that the Court would find public actions falling outside of the literal terms of *Flast,* whether brought by taxpayers or citizens, barred by the Article III requirements for standing. However, the Court's suggestion that Congressional authorization of the taxpayer suits deemed barred by *Flast* would be consistent with Article III suggests that *Richardson* and *Schlesinger* should be read as stating nonconstitutional prudential limitations on taxpayer standing. *Compare Richardson,* 418 U.S. at 176 n. 9, 178 n. 11, 94 S.Ct. 2940, *with Schlesinger, id.* 418 U.S. at 224 n. 14, 94 S.Ct. 2940. *See The Supreme Court 1973 Term,* 88 Harv.L.Rev. 41, 241–43 (1974). Justice Powell,

concurring separately in *Richardson,* would "explicitly reaffirm traditional prudential barriers against [federal taxpayer and citizen] public actions," by "limit[ing] the expansion of federal taxpayer and citizen standing in the absence of specific statutory authorization to an outer boundary drawn by the *results* in *Flast* and *Baker v. Carr.*" 418 U.S. at 196 & n. 18, 94 S.Ct. at 2956 (emphasis in original).

**24.** J.A. at 26. The court stated that the Appropriations Clause "is not a specific limitation on congressional power under the taxing and spending clause but rather a 'restriction upon the disbursing authority of the Executive department,'" *quoting Cincinatti Soap Co. v. United States,* 301 U.S. 308, 321, 57 S.Ct. 764, 81 L.Ed. 1122 (1937).

**25.** Brief of Plaintiffs-Appellants at 20–22.

closure of fiscal information.[26] The Supreme Court found this an attempt to raise a "generalized grievance" rather than the particularized, direct injury necessary to proper exercise of the judicial power.

The action in *Schlesinger* bears certain similarities to the instant case. Although the primary thrust of the anti-war activists' challenge was to prevent the conflict of interest potential inhering in the dual status of Reservist-Congressman, it also raised the issue of executive spending in violation of the Incompatibility Clause. And even though plaintiffs there requested the District Court to direct the Secretary of Defense to reclaim Reserve pay received by Reservist members of Congress, the majority opinion of Chief Justice Burger ruled that "[s]uch relief would follow from the invalidity of Executive action in paying persons who could not lawfully have been reservists, not from the invalidity of the statutes authorizing pay to those who lawfully were reservists." 418 U.S. at 228 n. 17, 94 S.Ct. at 2936. That the *Schlesinger* challenge failed because it was directed at executive conduct is made clear by Justice Stewart, who dissented in *Richardson* but agreed there could be no taxpayer standing in the *Reservist Congressmen* case "since there is simply no challenge to an exercise of the taxing and spending power." *Id.* at 229, 94 S.Ct. at 2936.

Appellants urge that *Richardson* and *Schlesinger* are distinguishable. They maintain that *Richardson* was not a challenge to spending but rather to the regulation, by statute, permitting nondisclosure of CIA expenditures, and that the primary aim of the suit in *Schlesinger* was to vindicate the essentially regulatory purposes of the Incompatibility Clause. Although these distinctions are not without some force,[27] classification of particular challenges as between "executive spending" and "executive regulatory action" is a more elusive enterprise than might appear at first glance. For example, appellants' challenge can be characterized as regulatory in aim—to compel an accounting by White House officials of the time spent on campaigning as opposed to official duties—and the "executive spending" on the salaries of the White House Staff members merely an incidental feature.

Passing by the issue of nomenclature, appellants' analogous test for executive spending would ignore the clear thrust of the *Richardson* and *Schlesinger* decisions to accord *Flast* a viability restricted to its express terms. And the fair implication of appellants' position is to recognize taxpayer standing to attack any executive action that draws on an outstanding appropriation on the ground that the purchases or services are not in accord with the congressional intent in passing the appropriation. This would place the judiciary in the role of management overseer of the Executive Branch. Such oversight is a function of Congress. Taxpayer standing here would bring into play the separation of powers concern pervading *Frothingham, Richardson* and *Schlesinger.*

Appellants' final argument is that if they are not granted standing, the constitutional violation alleged will go unremedied and the funds diverted to the Nixon re-election campaign will never be recouped.[28] We need not consider whether there is a "better plaintiff" than a taxpayer to maintain the instant challenge. If not, the taxpayer's claim is still barred. In *Richardson* the Court rejected this factor as a basis for

---

26. *See* 465 F.2d 844, 853–54 (1972).

27. The District Court in the *Reservist Congressmen* case noted: "[w]hile Congressmen in their position as Reservists also receive funds from the public treasury, it is not the expenditures thus incurred, but the possibility of undue Executive influence over the Congress, which the Constitution seeks to forbid. Plaintiffs' claim in no way depends upon the fact that some Congressmen receive pay as Reservists . . . ." 323 F.Supp. 833, 840 (D.D.C.1971).

28. Appellants concede that the Comptroller General and the General Accounting Office have authority to audit executive spending, but argue they have no authority to prevent or recover wrongful disbursements of federal funds contributed by taxpayers. Reply Brief of Plaintiffs-Appellants at 5–6.

finding taxpayer standing, and viewed "the absence of any particular individual or class" litigant as lending "support to the argument that the subject matter is committed to the surveillance of Congress, and ultimately to the political process."[29]

\* \* \*

This is an area of the law where the result is clear, in view of the cases, but there is less clarity in the doctrinal development. What was wrought by the *Flast* opinion—in opening the door to taxpayer actions, yet opening it only part way—was pragmatic in result, avoiding the flood of all manner of taxpayer actions. And yet it was rooted in a conceptual underpinning, permitting federal taxpayer standing in a class of cases where taxpayer suits were particularly appropriate and manageable—specifically, in cases involving the validity of taxing and appropriation statutes (as distinguished from cases involving "incidental expenditure[s] of tax funds in the ad-

ministration of an essentially regulatory statute"). The impact on federal taxpayers in such cases is conceptually direct, even though the dollar-and-cents consequence for a taxpayer is minimal. The doctrine thus evolved for federal taxpayers reflects considerations similar to those developed by the Court in the "good-faith pocketbook action" limitation on state taxpayer standing in the Supreme Court.[30]

Appellants' proposal to open the *Flast* door another arc is an attempt to build on the premise that they can claim the same dollars-and-cents impact as *Flast.* That is a necessary but not sufficient aspect of *Flast.* What appellants lack is what *Flast* found in the case of taxing and appropriations statutes—measures which in their very nature are directed toward taxpayers as a class. When what is involved is expenditures in implementation of a regulatory statute, or mere executive activity that entails some expenditures,[31] there is no similar arrow

**29.** 418 U.S. at 179, 94 S.Ct. at 2947. It has been pointed out that *Richardson* and *Schlesinger* involved practices that are unlikely to be remedied by operation of the political process. "In *Richardson*, the failure of the CIA to account for any of its expenditures suppresses public indignation and may hinder the arousal of political opposition. In *Schlesinger*, the fact that many congressmen are in the reserves makes congressional action on the issue unlikely, and a remedy through the electoral process may be difficult if being a reservist enhances a congressman's image in his home district." *The Supreme Court, 1973 Term,* 88 Harv.L.Rev. 41, 242 (1974).

**30.** The Court indicated that the first prong of its "nexus" test was "consistent with the limitation imposed upon state taxpayer standing in federal courts in *Doremus v. Board of Education,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952)." 392 U.S. at 102, 88 S.Ct. at 1954. In *Doremus* the Court would not recognize Article III standing in state taxpayers to challenge a statute providing for Bible reading in public schools, because of the absence of requisite "direct dollars-and-cents injury" when there was "no averment that the Bible reading increases any tax they do pay or that as taxpayers they are, will, or possibly can be out of pocket because of it." 342 U.S. at 433, 434, 72 S.Ct. at 397. The Court distinguished an earlier finding of Article III standing in *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), where a school district taxpayer challenged a state statute and board of

education resolution authorizing reimbursement of school transportation expenses to parents of children attending sectarian schools. As Justice Jackson put it, "*Everson* showed a measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of." 342 U.S. at 434, 72 S.Ct. at 397.

Although state taxpayers may be able to challenge executive conduct, as was the case in *Everson*, while federal taxpayers after *Richardson* and *Schlesinger* are restricted to Congressional exercises of the taxing and spending power, this anomaly is a consequence of the Court's traditional differentiation between state and federal taxpayers for purposes of standing. *See, e. g., Frothingham*, 262 U.S. at 486–87, 43 S.Ct. 597; *Doremus*, 342 U.S. at 433–34, 72 S.Ct. 394. The *Flast* "nexus" test, at least its first prong, is an attempt to frame a federal equivalent for the *Doremus* "good-faith pocketbook action" limitation on state taxpayer suits.

**31.** In *Protestants and Other Americans, etc. v. Watson, supra* note 1, this court permitted an Establishment Clause challenge by taxpayers to the Postmaster General's issuance of a commemorative Christmas postage stamp allegedly religious in character. Although it is unclear from the court's opinion whether a congressional appropriation was involved, this case was decided well before the recent learning in *Richardson* and *Schlesinger*.

In *Allen v. Hickel*, 138 U.S.App.D.C. 31, 33, 424 F.2d 944, 946 (1970), we found standing in

aimed at taxpayers as a class, but an activity of concern to the public at large.[32]

The District Court's grant of appellee's motion to dismiss is

*Affirmed.*

McMILLAN, District Judge (dissenting):

The plaintiffs in this case have, in my opinion, "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness . . . upon which the court so largely depends for illumination of difficult constitutional questions," and have therefore alleged the "gist of the question of standing," *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1967). In addition, one plaintiff at least is noted for his tenacity and perspicacity in the pursuit of public interest cases. A live "case or controversy" exists.

This case is unlike *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), because it attacks directly a misuse of funds by executive officers rather than executive action like that challenged in *Schlesinger v. Reservists, supra*, which did not directly call for spending public funds but merely continued in effect a military reserve status for legislators.

This case is unlike *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), because *Richardson* did not attack executive spending at all, but sought to require the Executive to make more meaningful *reports* on CIA operations.

This case is unlike both *Reservists* and *Richardson* because it alleges that defendants' use of tax money for political purposes runs counter to concrete prohibitions in both the Constitution and in an Act of Congress.

"Standing" requirements have already done much to close the door of the federal court house to citizen complaints about government operations; and I would not add any unnecessary impetus to that closing, unless existing controlling authority absolutely requires such a result. Though *Richardson* and *Reservists* might inferentially support a denial of standing, they do not in my opinion require such a result. I would not dismiss for lack of standing, but would uphold standing based upon the considerations set out above, and on those expressed in Mr. Justice Brennan's dissenting opinion in *Reservists*, 418 U.S. 208, 355, 94 S.Ct. 2925, 41 L.Ed.2d 706.

It is true that many federal employees are exempt from the Hatch Act, and that some of the defendants may come under the exemption covering employees whose salaries are paid out of the "appropriation for the office of the President" under 5 U.S.C. § 7324(d). That, of course, is a factual issue for the trial court.

In summary, I would find that plaintiffs have standing to bring the suit and that the case should be decided on the merits in favor of those defendants who may be covered by the express exemptions under 5 U.S.C. § 7324(d), but against any defendants not expressly so covered, including any persons whose salaries come from sources other than "appropriations for the office of the President."

---

park users to challenge the crèche display in the annual Christmas Pageant of Peace in the Ellipse as a violation of the Establishment Clause, without deciding whether they also had standing as taxpayers to challenge the expenditures of public funds entailed.

**32.** *See Morrison v. Callaway*, 369 F.Supp. 1160, 1162 (D.D.C.1974), rejecting a taxpayer's In-

compatibility Clause challenge to General Haig's service as assistant to former President Nixon while an officer in the Army ("It is [the] very narrow relationship between the taking of one's tax dollars and Congress' power to tax and spend which elevates the relationship to the level of a logical link referred to by the Court").