**Rev. John M. SWOMLEY, Jr., et al., Plaintiffs,**

v.

**James C. WATT, Defendant.**

Civ. A. No. 81–580.

United States District Court, District of Columbia.

Dec. 2, 1981.

Stephen L. Pevar, A.C.L.U., Denver, Colo., Arthur B. Spitzer, A.C.L.U. Fund of the Nat. Capital Area, Washington, D. C., for plaintiffs.

R. Craig Lawrence, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

JOHN LEWIS SMITH, Jr., Chief Judge.

This action is brought by the Reverend John M. Swomley, Jr. and three other plaintiffs against James Watt, Secretary of the United States Department of the Interior. At issue is federal involvement in the ongoing operation of Holy City, a group of buildings located on approximately 151 acres of land within the Wichita Mountain Wildlife Refuge. The Refuge, a federal game preserve near Lawton, Oklahoma, is managed by the Fish and Game Service of the Department of the Interior. In the 1930's the federal government, under the Works Project Administration, constructed buildings intended to replicate Jerusalem at the time of Christ on the section of the Refuge now known as Holy City. In 1962 the Secretary issued a twenty-year revocable permit to a private religious organization, the Wichita Mountains Easter Service Association. The permit allowed the Association exclusive control of Holy City, gave it permission to conduct annual religious pageants, and authorized it to erect a 23-foot white marble monument, Christ of the Wichitas, within the pageant area. Each year the Association conducts an Easter service, beginning at 2:00 A.M. and culminating at sunrise, and utilizing costumes, props, extensive sound amplification and movie-type lighting equipment. Attendance at the Easter sunrise service averages 15,000; hundreds of others tour Holy City year-round. Federal tax money is expended to provide the services necessitated by the visiting crowds.

Plaintiffs contend that the Secretary's actions in issuing the 1962 permit to the Association and in using federal monies to maintain the grounds of Holy City constitute a diversion of public lands and funds for religious purposes. They bring this action under the Establishment Clause and the Administrative Procedure Act, 5 U.S.C. §§ 551–59, 701–06 (1976 & Supp. III 1979) (APA)[1] to restore Holy City to public use and to halt what they view as the federal subsidization of religion. Specifically they request relief in the form of declaratory and injunctive orders forcing the Secretary to revoke the Association's permit, to order the immediate removal of religious symbols and iconography from Holy City, to render the site neutral as between believers and non-believers, to make the area available to all persons seeking to recognize First Amendment rights, and to issue permits for the use of the site on a first-come, first-serve basis and for a limited period of time. The case is before the Court now on defendant's motion to dismiss for failure to join an indispensable party and for lack of standing to sue.

---

[1]. In this Circuit the test for standing under the APA is essentially the same as the test for standing under the Establishment Clause, *see* *Tax Analysts and Advocates v. Simon*, 390 F.Supp. 927 (D.D.C.1975), *aff'd*, 566 F.2d 130 (D.C.Cir.1977); thus it makes no difference whether plaintiffs claim relief under the Establishment Clause or the APA.

■ Although the Association, as the current holder of a permit to use Holy City which will expire in 1982, has an interest in this suit and may be affected by it, these circumstances alone are not sufficient to qualify a party as indispensable. *See, e. g., Provident Tradesmens Bank and Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Cherokee Nation v. Hitchcock,* 187 U.S. 294, 23 S.Ct. 115, 47 L.Ed. 183 (1902); *Commercial State Bank of Roseville v. Gidney,* 174 F.Supp. 770 (D.D.C.1959), *aff'd,* 278 F.2d 871 (D.C.Cir. 1960); *Defenders of Wildlife v. Andrus,* 77 F.R.D. 448 (D.D.C.1978). Rather, Rule 19 directs the Court to consider other factors in determining whether a party is indispensable so as to require dismissal; among these factors are the possible prejudice and inadequacy of a judgment in the absence of the nonjoinable entity, both as to the entity not joined and to those already present. Fed.R.Civ.P. 19(b). In this regard the fact that the Association's permit was and is revocable at any time by the Secretary lessens the possible prejudice to the Association and the danger of subjecting the Secretary to inconsistent judgments should the case be decided without the presence of the Association. Neither the Association's rights nor the Secretary's obligation under the permit have ever been absolute.

■ Totally apart from the above considerations, it is well settled that even when a party might otherwise be indispensable, joinder is not required where the plaintiff seeks to vindicate *public* rights. *National Licorice Co. v. NLRB,* 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940). The Court of Appeals for this Circuit has applied the *National Licorice* rule to the situation in which private parties bring suit to assert public rights. *See National Resources Defense Council, Inc. v. Berkland,* 458 F.Supp. 925, 933 (D.D.C.1978), *aff'd per curiam,* 609 F.2d 553 (D.C.Cir.1979). Plaintiffs' action is governed by the same rule. Accordingly, there is no merit in the motion to dismiss on the ground that the Association is indispensable.

■ Defendants also deny that plaintiffs have standing. The modern law of standing as stated by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), set forth a two-pronged test, requiring the plaintiff to allege "injury in fact, economic or otherwise," to an interest "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 152–53, 90 S.Ct. at 829. *See, e. g., Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1978); *Warth v. Seldin,* 442 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Greater Tampa Chamber of Commerce v. Goldschmidt,* 627 F.2d 258 (D.C.Cir.1980). The complaint here alleges that the plaintiffs all have interests in the litigation as both taxpayers and citizens.

■ Taxpayer standing and its requirements were examined by the Supreme Court in *Frothingham v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), and addressed once again by the Court in *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Under *Flast,* "the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus the taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, Section 8, of the Constitution.... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged...." *Id.* at 102–03, 88 S.Ct. at 1953–54. Plaintiffs here fail to satisfy the first aspect of the *Flast* nexus test, for they do not challenge any act of Congress, but rather the issuance of a permit and the expenditure of funds by an executive de-

**1274**

partment.[2] The Court of Appeals for this Circuit has held repeatedly that challenges to actions of the executive branch are not cognizable in a federal taxpayer action after the Supreme Court decisions in *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), and *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), despite the narrow meaning thus accorded to taxpayer standing. *See American Jewish Congress v. Vance*, 575 F.2d 939, 944 (D.C. Cir. 1978); *Public Citizen, Inc. v. Simon*, 539 F.2d 211, 216–17 (D.C. Cir. 1976). That an alleged constitutional violation may go unremedied for lack of a plaintiff with standing is not a reason to find standing. *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. at 227, 94 S.Ct. at 2935. *See also Americans United for Separation of Church and State, Inc. v. HEW*, 619 F.2d 252, 256–57 (3d Cir. 1980), *cert. granted, Valley Forge Christian College v. Americans United for Separation of Church and State*, 409 U.S. 909, 101 S.Ct. 1345, 67 L.Ed.2d 332 (1981); *Public Citizen, Inc. v. Simon*, 539 F.2d at 217–18. Indeed, the Supreme Court has suggested that the absence of a suitable litigant may lend support to the argument that the subject matter is ultimately committed to the political process. *United States v. Richardson*, 418 U.S. at 179, 94 S.Ct. at 2947. Because the plaintiffs in this litigation fail to meet the standards specified by *Flast* and applied in later cases, this Court does not view them as having taxpayer standing.

In the alternative, plaintiffs claim citizenship standing under the Establishment Clause. Defendants urge dismissal on the grounds that plaintiffs have alleged no concrete and particular injury to themselves, and that neither emotional involvement, *Ashcroft v. Mattis*, 431 U.S. 171, 173, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977), nor mere interest in a problem, *Sierra Club v. Morton*, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972), is a sufficient

basis upon which to predicate standing. Plaintiffs counter with the argument that spiritual values are within the zone of interests protected by the Establishment Clause, and that under *Data Processing*, citizens have standing to challenge the diversion of public property to a religious use upon the showing that the citizens' spiritual values are at stake in the controversy. *See* 397 U.S. at 154, 90 S.Ct. at 830.

■ Plaintiffs are correct in their assertion that the law of standing has recently been more broadly interpreted in cases involving the Establishment Clause. *See, e. g., Americans United for the Separation of Church and State v. HEW*, 619 F.2d 252 (3d Cir. 1980); *Anderson v. Salt Lake City Corp.*, 475 F.2d 29 (10th Cir. 1973), *cert. denied*, 414 U.S. 879, 94 S.Ct. 50, 38 L.Ed.2d 124; *Allen v. Hickel*, 424 F.2d 944, 946 (D.C. Cir. 1973), *rev'd on other grounds, Allen v. Morton*, 495 F.2d 65 (D.C. Cir. 1973); *ACLU v. Rabun County Chamber of Commerce, Inc.*, 510 F.Supp. 886 (N.D. Ga. 1981). Despite this expansion of standing under the Establishment Clause, however, an allegation of particular, concrete injury to the qualifying interest is still required. Indeed, the Court of Appeals for this Circuit has continued to stress the requirement of "injury in fact" to the plaintiff before granting standing, no matter how broadly it has defined the interest being asserted. *See, e. g., Southern Mutual Help Association v. Califano*, 574 F.2d 518, 523–24 (D.C. Cir. 1977); *Animal Welfare Institute v. Kreps*, 561 F.2d 1002, 1007–08 (D.C. Cir. 1970). Plaintiffs claim that their "spiritual stake" in this suit is identical to that of the plaintiffs in *Allen v. Hickel*, 424 F.2d 944 (D.C. Cir.1970), *on remand*, 333 F.Supp. 1088 (D.D.C.1971). Citizens in *Allen*, alleging that public land was being diverted to a religious purpose, brought suit to enjoin the construction and maintenance of a crèche on federal parkland. 424 F.2d at 947. Plaintiffs are correct that this interest in

---

**2.** Inasmuch as plaintiffs here contest an executive rather than a congressional act, it is clear that they do not challenge the constitutionality of any act under the congressional taxing and

spending power, as required by the second aspect of the *Flast* test. 392 U.S. at 108, 88 S.Ct. at 1956.

free access to federal parkland for all is the same as that asserted in the present litigation. They neglect to note, however, that the plaintiffs in *Allen* all satisfied the "injury in fact" requirement as well, by virtue of the fact that they were all residents of metropolitan Washington, D. C., the site of the putatively illegal federal act. *Id.*

■ Applying the law as set forth above to the complaint in this case, it is possible to conclude that the interest asserted by plaintiffs, a concern for religious freedom and a right to a government separate from religion, may be within the zone of interests cognizable as a basis for citizen standing under the Establishment Clause. *See, e. g., Americans United for Separation of Church and State v. HEW,* 619 F.2d at 265; *Allen v. Hickel,* 424 F.2d at 947. Nevertheless, the Court finds that the plaintiffs have not satisfied the direct "injury in fact" requirement. Only two of the plaintiffs, Mr. Cleveland, a farmer who lives near Holy City and travels frequently on a highway adjacent to it, and Professor Sheppe, a professor of biology and conservationist who recently visited Holy City for research purposes, even allege that they have seen the site. The other two plaintiffs, Reverend Swomley of Kansas City, Missouri, and Reverend Finlator of Raleigh, North Carolina, are clergymen who claim to be "seriously concerned about the separation of church and state ...." Although the plaintiffs' concern with the issue is a cognizable interest, this Court finds that none of these plaintiffs have suffered any direct and individuated "injury in fact." Rather, the Court finds that they have presented nothing more than "generalized grievances," and on this basis they should not be allowed to assert the public interest in a constitutional claim. *United States v. Richardson,* 418 U.S. 166, 179–80, 94 S.Ct. 2940, 2947–48, 41 L.Ed.2d 678 (1974). Accordingly, this action must be dismissed.

An order consistent with this opinion follows.