James G. MAHORNER, Plaintiff,

v.

George W. BUSH, President of the United States, et al., Defendants.

No. CIV.A. 02–1530(RBW).

United States District Court, District of Columbia.

Sept. 16, 2002.

James G. Mahorner, Jacksonville Beach, FL, pro se.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter comes before the Court upon plaintiff's Motion for Emergency Preliminary Injunction, filed August 27, 2002, to enjoin defendant President George W. Bush ("President Bush") "from causing or engaging in further military action [in Iraq] without a Congressional declaration of war, except in an immediate response to launched missiles or other imminent or occurring attacks directed to the territory of this country, until a final hearing and determination on the merits in the above-entitled action." Motion for Emergency Preliminary Injunction ("Pl.'s Mot.") at 1. The plaintiff's underlying complaint requests that this Court: (1) issue a declaratory judgment that President Bush is unconstitutionally initiating war by ordering the United States military to attack countries without Congressional approval; (2) issue a declaratory judgment that the appropriation of funds to Israel by President Bush and defendant Secretary of the Treasury Paul H. O'Neill ("Secretary O'Neill") violates Article I, Section 8, Clause 11 of the Constitution's Establishment Clause; (3) enjoin President Bush from attacking Iraq or any other foreign nation without a declaration of war from Congress; and (4) enjoin President Bush and Secretary O'Neill from giving additional aid to Israel. Complaint ("Compl.") at 17–18. Upon consideration of the applicable legal principles and for the reasons set forth below, this Court must dismiss this case *sua sponte* because the plaintiff's claims are non-justiciable, as he lacks

standing to bring them and they present political questions.

### I. *Non–Justiciability of the Plaintiff's Complaint*

█ It is a fundamental axiom that pursuant to Article III of the Constitution, federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies." U.S. Const. art. III, § 2. As a result of the Constitution's "case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and the political question doctrine." *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996) (citing *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). An analysis of these "justiciable doctrines" reveals beyond all doubt that this Court lacks subject matter jurisdiction to entertain the plaintiff's complaint because he is unable to satisfy at least two of them, standing and the political question doctrine.[1]

### (A) *Standing*

█ For a plaintiff to have Article III standing to bring a claim in federal court, the plaintiff bears the burden of establishing that he has suffered "an (1) 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'—(2) which is 'fairly traceable' to the challenged act, and (3) 'likely' to be 'redressed by a favorable decision.'" *National Treasury Employees*, 101 F.3d at 1427 (quoting *Lujan v.*

---

**1.** While arguably a distinct justiciable doctrine from standing, it is clear that the plaintiff's claims are also not ripe for review because, for the same reasons standing bars the plaintiff from pursuing his claims, they are devoid of an impending injury in fact. *Na-* *tional Treasury Employees,* 101 F.3d at 1427 (citing *Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 81, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978); *DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.,* 887 F.2d 275, 297 (D.C.Cir.1989)).

*Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The District of Columbia Circuit has explained that "[w]ith respect to the 'injury in fact' requirement ... the injury alleged cannot be conjectural or hypothetical, remote, speculative, or abstract. Rather, it must be certainly impending." *Id.* (internal quotations and citations omitted).

### (1) *The Plaintiff's Requests for this Court to issue a Declaratory Judgment and Enjoin President Bush from Initiating Military Force in Foreign Countries*

The plaintiff asserts that he has suffered an injury in fact because "[t]he action by the President of initiating war by ... ordering [ ] military attacks against other countries with U.S. Armed Forces without Congressional authority, constitutes a major threat that Plaintiff will suffer loss of life in the response forthcoming from the country attacked ..." Compl. at 15. Additionally, the plaintiff contends that such military action initiated by President Bush "has created a substantial threat to Plaintiff and others in Plaintiff's class of being vaporized by nuclear war ..." Compl. at 3. Both positions fail to satisfy the injury in fact requirement necessary to establish standing. The plaintiff's allegation that he will suffer an increased chance of losing his life if President Bush initiates a military conflict with Iraq, amounts to nothing more than speculation about future events that may or may not occur. As the District of Columbia Circuit has stated, "[i]t is not enough ... to assert that [the plaintiff] might suffer an injury in the future, or even that it is likely [he will] suffer an injury at some unknown future time. Such 'someday' injuries are insufficient." *J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C.Cir.1996).

### (2) *The Plaintiff's Requests for this Court to issue a Declaratory Judgment and Enjoin President Bush and Secretary O'Neill from Sending Aid to Israel*

While the plaintiff does not directly assert that he has sustained an injury in fact as a result of the financial assistance the United States government provides to Israel, even assuming *arguendo* that he has, plaintiff's status as a taxpayer does not afford him standing to advance a challenge to the granting of foreign aid by the federal government. This Court's analysis of whether a taxpayer has standing to contest governmental action must begin with the Supreme Court's opinion in *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). In *Frothingham*, a taxpayer brought suit against the Secretary of the Treasury challenging the constitutionality of the Maternity Act of 1921. The plaintiff alleged that her injury was the burden of taxation arising from an unconstitutional statute that provided federal funds to the States to promote maternal and infant health. In rejecting the plaintiff's claim, the Supreme Court held that she lacked standing because her alleged injury, the tax burden, was "remote, fluctuating and uncertain." The Court explained that

> [t]he party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that [she] has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that [she] suffers some indefinite way in common with people generally.

*Id.* at 488, 43 S.Ct. 597. In *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), the Court established a two-part test to determine taxpayer standing. First, the Court held that "a taxpayer will be a proper party to allege the unconstitu-

tionality *only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution." Id.* at 102, 88 S.Ct. 1942 (emphasis added). Second, the Court concluded that the taxpayer must "show that the challenged enactment exceeds specific constitutional limitations upon the exercise of the taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8." *Id.* at 102–103, 88 S.Ct. 1942. The *Flast* Court reaffirmed that the "case or controversy" aspect of Article III standing is not met "where a taxpayer seeks to employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System." *Id.* at 106, 88 S.Ct. 1942. In this case, the plaintiff fails to meet the first prong of the *Flast* standing test, as he does not challenge any act of Congress, but expenditures by the executive branch, and therefore this Court must dismiss his cause of action because courts have consistently held that challenges to actions by members of the Executive Branch by citizens solely on the basis of their status as taxpayers are not cognizable in the federal courts.

In *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.;* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court, applying the *Flast* test, rejected the plaintiff's challenge to the transfer of federal property by the Secretary of Health, Education, and Welfare to a religious organization. The Court concluded that the plaintiff lacked standing because the "source of their complaint is not a congressional action, but a decision by [the Executive Branch] to transfer a parcel of federal property. *Flast* limited taxpayer standing to challenges directed 'only [at] exercises of congressional power.'" *Id.* at 479, 102

S.Ct. 752 (quoting *Flast,* 392 U.S. at 102, 88 S.Ct. 1942).

The District of Columbia Circuit has also repeatedly held that "challenges to actions of the executive branch are not cognizable in a federal taxpayer action ..." *Swomley v. Watt,* 526 F.Supp. 1271, 1274 (D.D.C.1981) (citing *American Jewish Congress v. Vance,* 575 F.2d 939, 944 (D.C.Cir.1978); *Public Citizen, Inc. v. Simon,* 539 F.2d 211, 216–17 (D.C.Cir.1976)). In *American Jewish Congress,* the Circuit Court addressed a challenge by members of the American Jewish Congress seeking injunctive, declaratory and mandamus relief against several members of the President's Cabinet and other subordinate officials to prevent them from engaging in economic cooperation between the United States and Saudi Arabia. 575 F.2d 939. The Court held that the plaintiffs lacked standing on several grounds to assert their claims. First, the plaintiff could not demonstrate that it had sustained an injury in fact. The only potential injury suffered by the plaintiff's members as citizens was the "general unconstitutional conduct of the defendants." *Id.* at 944. "However, the proper observance of constitutional limitations by government officials is an interest shared by all members of the American public. Any injury to that interest is necessarily abstract and lacking in the concreteness required to confer standing." *Id.* (citations omitted). In addition, applying the *Flast* test, the Court also concluded that the plaintiffs lacked standing as citizen taxpayers. The Court reiterated that to establish standing as a taxpayer "the plaintiff must be challenging a congressional action under the taxing and spending power of article I, section 8, of the Constitution, and must allege contravention of a specific limitation on that power." *Id.* (citing *Flast,* 392 U.S. at 102–03, 88 S.Ct. 1942; *United States v. Richardson,* 418 U.S. 166, 175, 94 S.Ct. 2940, 41

L.Ed.2d 678 (1974)). The Court held that the plaintiffs lacked standing as taxpayers because the only action they were challenging was that of executive officials engaged in economic cooperative programs with Saudi Arabia. *Id.* Thus, "[s]uch allegations falter in the first stage of the *Flast* test, because they are directed at executive action rather than at a congressional enactment under article I, section 8." *Id.* (citation omitted). Similarly, in *Public Citizen,* the District of Columbia Circuit rejected a challenge by the plaintiff that sought a judicial order that would require the Secretary of Treasury to recover all salaries paid to certain members of the White House staff who were devoting a significant amount of their time to the presidential election campaign. 539 F.2d 211. The Court noted that the *Flast* exception to the general rule that taxpayers lack standing is "a viability restricted to its express terms." *Id.* at 217. The *Public Citizen* Court explained that judicial review over executive action "would place the judiciary in the role of management overseer of the Executive Branch. Such oversight is a function of Congress." *Id.*

### (B) *Political Question Doctrine*

 Not only does the plaintiff lack standing to bring this case, but the plaintiff's claims are clearly non-justiciable political questions. The Supreme Court has explained that a political question is a controversy in which there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it . . ." *Nixon v. United States,* 506 U.S. 224, 228, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) (quoting *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Courts have developed through a long line of cases that matters involving foreign policy and military decisions are political in

nature, and not within the province of the judicial branch. In *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568 (1948), the Supreme Court stated that

> the very nature of executive decisions as to foreign policy is political, not judicial. Such decisions are wholly confided by our Constitution to the political departments of the government, Executive and Legislative. They are delicate, complex, and involve large elements of prophecy. They are and should be undertaken only by those directly responsible to the people whose welfare they advance or imperil. They are decisions of a kind for which the Judiciary has neither the aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.

The conducting of military operations is considered to be "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy,* 342 U.S. 580, 589, 72 S.Ct. 512, 96 L.Ed. 586 (1952) (citations omitted). The District of Columbia Circuit stated that

> [i]t is difficult to think of an area less suited for judicial action . . . The fundamental division of authority and power established by the Constitution precludes judges from overseeing the conduct of foreign policy or the use and disposition of military power; these matters are plainly the exclusive province of Congress and the Executive.

*Luftig v. McNamara,* 373 F.2d 664, 665–66 (D.C.Cir.1967) (affirming a *sua sponte* dismissal by the district court of a complaint brought by a serviceman to enjoin the Secretary of Defense and the Secretary of the Army from sending him to Vietnam, in an action claiming that the military conflict in Vietnam was unconstitutional).

Although it is abundantly clear that the plaintiff's claims concerning the Executive Branch's ability to conduct both military and foreign affairs are non-justiciable political questions, the Court finds a discussion by the Fifth Circuit in *Dickson v. Ford*, 521 F.2d 234 (5th Cir.1975) instructive.[2] In *Dickson*, the plaintiff brought a challenge as a taxpayer to the constitutionality of the Emergency Security Assistance Act of 1973 ("ESAA"), Pub. Law 93–199, which provided financial aid to the military of the State of Israel. *Id.* In a strikingly similar argument to the plaintiff's position in this case, Dickson's complaint alleged that the State of Israel "was created by. and is an instrument of the larger entity known as the Jewish People, and, hence, grants of foreign assistance by the United States to Israel are prohibited by the Establishment of Religion Clause of the First Amendment to the Constitution." *Id.* at 235. Commenting on the challenge to the ESAA, the Fifth Circuit observed that "[a]mong the areas which the courts have traditionally deemed to involve political questions is the conduct of foreign relations, which 'is committed by the Constitution to the executive and legislative "the political" departments of the government . . .' " *Id.* at 236 (quoting *Oetjen v. Central Leather Co.*, 246 U.S. 297, 302, 38 S.Ct. 309, 62 L.Ed. 726 (1918)). Thus, the Fifth Circuit found that the plaintiff's

> challenge to the constitutionality of the Congressional Acts in question is a challenge to the power of the President and Congress to conduct the foreign affairs of the United States. Both the Congress and the President have determined that military and economic assistance to the State of Israel is necessary . . . [and] a determination of whether foreign aid to Israel is necessary . . . is a

'question uniquely demand[ing] [of a] single-voiced statement of the Government's views,' quoting *Baker*, 369 U.S. at 211, 82 S.Ct. 691, and a decision 'of a kind for which the Judiciary has neither aptitude, facilities nor responsibility . . .' quoting *Chicago & Southern Air Lines v. Waterman S S Corp.*, 333 U.S. 103, 111, 68 S.Ct. 431, 92 L.Ed. 568.

*Id.* This Court need not say anything more on the subject.

## II. *Conclusion*

■ For the reasons set forth above, this Court will *sua sponte* dismiss the plaintiff's claims requesting injunctive relief to enjoin the President from using military force against Iraq and to prevent the President and the Secretary of the Treasury from sending financial aid to Israel because the plaintiff lacks standing to assert these claims and his claims present political questions not subject to judicial review. In *Luftig*, the District of Columbia Circuit, confronted with the challenge of this Court's *sua sponte* dismissal of the plaintiff's claim that the military conflict in Vietnam was unconstitutional, affirmed the finding that the plaintiff's allegation was a political question beyond the jurisdiction of the Court and stated that this

> proposition [is] so clear that no discussion or citation of authority is needed. The only purpose to be accomplished by saying this much on the subject is to make it clear to others comparably situated and similarly inclined that resort to the courts is futile, in addition to being wasteful of judicial time, for which there are urgent legitimate demands.

373 F.2d at 665–66. Echoing this Circuit Court's ruling in *Luftig*, this Court con-

---

2. Finding that the plaintiff's cause presented a nonjusticiable political question, the Fifth Circuit in *Dickson* declined to address wheth-

er the plaintiff's status as a taxpayer satisfied the *Flast* standing test for challenges of Congressional appropriations. 521 F.2d at 235.

cludes that plaintiff's attempt to obtain relief from the courts is futile and it would be a waste of the Court's and the Executive Branch's time to further entertain plaintiff's claims. Accordingly, as was done in *Luftig*, this matter is dismissed *sua sponte* by the Court because it does not present an Article III "Case" or "Controversy."[3]

SO ORDERED.

### *ORDER*

Upon consideration of the claims in the above-captioned cause of action, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the this cause of action is hereby **DISMISSED WITH PREJUDICE.**

---

**3.** An Order consistent with the Court's ruling accompanies this Memorandum Opinion.