**NATIONAL WILDLIFE FEDERATION, Plaintiff,**

v.

**Robert F. BURFORD, et al., Defendants.**

**Civ. A. No. 85–2238.**

United States District Court, District of Columbia.

Feb. 10, 1986.

Norman L. Dean, Jr., Kathleen C. Zimmerman, Washington, D.C., for plaintiff.

U.S. Dept. of Justice, Susan V. Cook, Pauline H. Milius, Jacques B. Gelin, Washington, D.C., (Office of the Solicitor, U.S. Dept. of Interior, Gary L. Bohlke, Michael Jeter, Richard J. Woodcock, Washington, D.C., of counsel), for defendants.

Steven R. Ross, Charles Tiefer, Michael L. Murray, Washington, D.C., for intervenor-plaintiff House of Representatives.

Constance E. Brooks, Casey Shpall, Denver, Colo., Tim Haake, Washington, D.C., for defendant-intervenor Mountain States Legal Foundation.

Fred W. Drogula, Patricia N. Blair, Washington, D.C., for defendant amicus curiae All American Pipeline Co.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff National Wildlife Federation (NWF) has sued the Director of the Bureau

of Land Management, the Secretary of the Interior and the Department of the Interior to achieve, *inter alia,* reinstatement of all land classifications and withdrawals in effect on January 1, 1981 until defendants take certain actions that plaintiff claims are required by law. This opinion addresses several pending motions.

### Background

On December 4, 1985 we granted a preliminary injunction. The order included a prohibition against defendants' modifying, terminating, or altering any withdrawal, classification or other designation governing protection of the lands in the public domain that was in effect on January 1, 1981 or taking any action inconsistent with such withdrawals, classifications or other designations. It also enjoined all persons holding interests in the lands at issue from taking any action inconsistent with the present status of the lands.

Since our order of December 4, 1985, the parties have filed several motions. The federal defendants asked us to amend, reconsider and clarify the order. Defendant–intervenor Mountain States Legal Foundation (Mountain States) also moved for reconsideration and, in addition, for either reconsideration of our order denying its earlier motion to dismiss or, in the alternative, certification of the joinder issue to the Court of Appeals. Finally, plaintiff moved to consolidate a hearing on defendants' motions with a hearing on the merits.

We issued a stay of our preliminary injunction on December 16, 1985. On January 6, 1986, we heard arguments on defendants' motions. At the hearing, the federal defendants submitted a proposed order similar to plaintiff's suggested revision. We then asked the parties to confer and attempt to agree on a draft order. Plaintiff and the federal defendants now offer such an order but disagree on the interpretation of one of its provisions. Mountain States does not join in presenting this order but renews its earlier objections to the is-

suance of any injunction. We will discuss the various motions pending as well as detail our intention with respect to certain provisions of the new order.

### Discussion

I. *Motions for Reconsideration*

At the outset we deny the federal defendants' request for reconsideration of our issuance of the preliminary injunction. They offer no new points in opposition, and we continue to adhere to our reasoning as set out in the December 4, 1985 Memorandum Opinion. Mountain States, on the other hand, does introduce several new arguments, which we will now address separately.

A. *Lack of Injury to Plaintiff*

■ Mountain States claims that since the lands at issue were subject to certain commercial exploitation even before defendants' classification terminations and withdrawal revocations, NWF can prove no injury.[1] It contends, in essence, that once commercial development was authorized, there could be no further injury to the environmental and aesthetic interests of plaintiff's members. This generalization sweeps too broadly. It fails to distinguish among types of commercial development. The fact that land was previously open to activities such as "dam construction, airports, hydroelectric power sites, and military reservations and target ranges," Mtn. States Reply at 3, hardly eliminates injury when the land is later made available for strip mining. Similarly, there is injury to plaintiff's members ability to use land, once open only to mineral leasing, that becomes subject, through operation of the mining laws, to fee interest transfer. Mountain States has not shown that the prior commercial uses of the lands are identical to those allowed since the withdrawals were revoked and the classifications terminated. We continue to find irreparable injury to plaintiff and reaffirm plaintiff's standing to bring this action.

---

1. This contention, while challenging our jurisdiction to grant equitable relief, raises the issue of plaintiff's standing to sue.

## B. *Exhaustion*

■ Mountain States also raises, for the first time, a claim that this court may not review plaintiff's claims since NWF has not exhausted its administrative remedies. Mountain States concedes that the withdrawal decisions represent final agency actions. Reply at 8 n. 5. Thus, its exhaustion argument can focus only on the classification terminations.

Neither the Federal Land Policy and Management Act, 13 U.S.C. §§ 1701, *et seq.* (FLPMA), nor the applicable regulations foreclose this court's review of defendants' actions. The statute itself imposes no exhaustion requirement,[2] and in fact emphasizes Congress' desire to provide for judicial review of public land adjudication decisions. 43 U.S.C. § 1701(a)(6). Similarly, the regulations appear to vest a right of appeal only in an individual "party" to a discrete classification termination case. 43 C.F.R. § 4.410(a) (1984). NWF was not a "party" to any of defendants' termination decisions.

Mountain States argues that the regulations pertaining specifically to land classifications establish a right—and a duty—to seek administrative review. The regulations provide that classifications may be "changed" using specified procedures, 43 C.F.R. § 2461.4, which include a sixty-day delay after publication of the proposed classification, § 2461.2, and a thirty-day period after final publication for administrative review. § 2461.3. However, the procedures of Subpart 2461 relate only to the process of classifying public lands. They do not appear to address actions *terminating* such classifications. We do not share Mountain States' confidence that "changing" classifications necessarily includes terminating them. Furthermore, the government never published its proposed decisions, as required by 43 C.F.R. § 2461.2. Pl.Opp. to Mtn. States Motion at 7. It would be anomalous to impose a rigid exhaustion requirement on plaintiff where defendants have not followed or attempted to follow their own procedures.[3]

We note further that mere publication in the *Federal Register* may not alert even the most careful reader that defendants' classification terminations should inspire protest. As plaintiff noted earlier, the notices in the *Federal Register* do not indicate "whether environmental impact statements were prepared, whether land use plans supported the action, or whether the action had been sent to the President and Congress for review." Pl. Reply to Def. Opp. to Pl. Motion for Prelim. Inj. at 13. Unlike most challenges to agency action, plaintiff's complaint raises concerns which the agency's notice, on its face, may not have triggered or aroused.

Even if the regulations normally require administrative review, we do not feel that in the factual context of this case any exhaustion rule limits our jurisdiction. Exhaustion is a flexible requirement, one tailored to "an understanding of its purposes and of the particular administrative scheme involved." *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *accord Etelson v. Office of Personnel Management*, 684 F.2d 918, 923 (D.C.Cir.1982). As the Supreme Court has observed, the requirement of exhaustion allows the agency the opportunity to make a factual record, to exercise its discretion or to apply its expertise. It permits the agency to discover and correct its own errors. It prevents deliberate flouting of administrative processes. Finally, it avoids the necessity of premature judicial intervention. *McKart*, 395 U.S. at 194–95, 89 S.Ct. at 1662–63.

None of the underlying purposes of exhaustion apply here. The essence of plaintiff's claim is legal: the exercise of agency discretion and expertise and the development of a factual record would not be

---

2. Mountain States alleges that 43 U.S.C. § 1704 mandates application of the review mechanism of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* Reply at 10. We have read Title 43 but do not find a § 1704.

3. This failure to publish proposed termination actions also undermines Mountain States' reliance on 43 C.F.R. §§ 4.450 and 2450.4(a), since both sections assume that action has first been "proposed."

helpful or necessary to decide this legal issue. Plaintiff's unsuccessful attempts earlier to encourage defendants to reverse their present policies, the government's commitment to these policies as revealed in its vigorous defense, and the magnitude of decisions involved all indicate the futility of further administrative efforts and the inevitability of recourse to the courts. Finally, plaintiff's attempts to present its claims to the government through various means, Pl. Opp. at 8, demonstrate that while plaintiff did not seek full-scale administrative review, it did not "flout" the administrative process.

Thus finding that plaintiff need not have pursued administrative review and that an exhaustion prerequisite would serve no benefit here, we hold that plaintiff may seek judicial review.

C. *Certification of the Joinder Question Under 28 U.S.C. § 1292(b)*

■ Mountain States urges us either to reconsider our denial of its motion to dismiss for failure to join indispensible parties or to certify the issue to the Court of Appeals under 28 U.S.C. § 1292(b). We recognize Mountain States' legitimate concern for the interests of the absent parties. However, we see no reason to reverse our original ruling. The effective result of preventing plaintiff from litigating its claims were we to require joinder and the "public rights" exception to normal joinder rules combine to reinforce our holding that the absent parties are not "indispensible."

Further, we decline to certify the issue under § 1292(b). The statute permits certification when, on issuing an order, the district judge "shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." To begin with, we

do not believe there is "substantial ground for difference of opinion" with our conclusion that joinder here is unnecessary. This case clearly fits the doctrine of the "public rights" exception, as established by the Supreme Court in *National Licorice Co. v. NLRB*, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940), and developed in subsequent cases. Contrary to Mountain States' assertion, the potential adverse effect on the absent parties does not reflect a novel application of the doctrine. *See, e.g., Jeffries v. Georgia Residential Finance Authority*, 678 F.2d 919 (11th Cir.1982), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed. 2d 283 (1982); *Swomley v. Watt*, 526 F.Supp. 1271 (D.D.C.1981); *Natural Resources Defense Council v. Berklund*, 458 F.Supp. 925 (D.D.C.1978), *aff'd*, 609 F.2d 553 (D.C.Cir.1979).

Mountain States argues that the "public rights" exception does not justify nonjoinder where plaintiff's requested relief would not just harm but would "invalidate the property rights" of the absent parties. Memo. in Support of Motion for Reconsideration at 30. Plaintiff, however, does not request direct cancellation of any property rights. It seeks compliance with certain statutes and regulations. Other courts have applied the "public rights" exception where a plaintiff seeks similar compliance with the law, even though the immediate effect of plaintiff's request would be harm to third parties. *See NRDC v. Berklund*, 458 F.Supp. 925[4]; *State of Delaware v. Bender*, 370 F.Supp. 1193 (D.Del.1974).

This case typifies a "public rights" proceeding. Plaintiff seeks to protect and enforce the public's right to full compliance with the laws governing management of the public lands. The fact that Mountain States claims also to represent an alternative public interest does not weaken the force of the "public rights" doctrine in this case. *See Sierra Club v. Watt*, 608 F.Supp. 305, 325 (E.D.Cal.1985) (opponents

---

**4.** Mountain States attempts to distinguish *NRDC v. Berklund* on the ground that the relief eventually *provided* merely delayed the issuance of coal leases. Yet in discussing the joinder problem earlier in the opinion, Judge Green gave no indication that she was not considering the full relief plaintiff there sought, which included enjoining defendants from issuing the leases without recognizing the Secretary's discretion to reject lease applications on environmental grounds and without preparing an environmental impact statement.

of public interest plaintiffs included a public interest group with a viewpoint different from the plaintiffs'). In *Sierra Club*, several environmental organizations and the State of California challenged, *inter alia*, the Secretary of the Interior's exclusion of lands less than 5,000 acres from wilderness study area status. In holding that the "public interest" exception justified nonjoinder of the owners of mineral rights in those lands, the court concluded "[w]hatever the outer boundaries of the public interest exception, the instant case falls within the heart of it." 608 F.Supp. at 325. We believe that the facts of this case parallel those of *Sierra Club* and that this case also "falls within the heart" of the "public interest" exception.[5]

Furthermore, an immediate appeal of the joinder issue is not likely to "materially advance the ultimate termination of the litigation." Today we reissue the preliminary injunction. Plaintiff, through its motion to consolidate, has evidenced its readiness to proceed to the permanent injunction proceeding. While defendants oppose this motion, we do not believe that final adjudication in this court represents a distant hope. An interlocutory appeal to the Court of Appeals, whose own over-loaded docket precludes early resolution, would not "materially" advance termination of this case.

Having denied both motions for reconsideration of the preliminary injunction, we now turn to the order itself.

## II. *Preliminary Injunction Order*

■ The preliminary injunction order accompanies this opinion. We here highlight certain aspects of that order.

First, the preliminary injunction order enjoins only the federal defendants. Third parties are not subject to its prohibitions.

Second, we do not intend by this order to overturn or in any way to upset fee interests. Parties, such as Summit County School District, we understand, which have fee interests in the lands at issue in this case are not affected by the preliminary injunction.

Third, while the order specifically protects state selection and conveyance rights of the State of Alaska, the conveyance rights of Alaska natives, the continued construction of the All American Pipeline, and transactions or activity by Summit County School District. These are limited exclusions. Other third parties are not encouraged to seek exemption. We believe that Alaska, All American and the School District would be able to continue with their present plans regardless of the provisions in the order that mention them. In other words, these parties are already exempted under the general terms of the order. We name them merely out of an abundance of caution to emphasize that the injunction does not affect them.

Fourth, paragraph 3(a) refers to filing required to be made by holders of existing mining claims in order to preserve their claims. *See* 43 C.F.R. § 3833.2–1. It does not permit defendants to authorize mining activity.

Finally, the injunction prohibits the federal defendants from taking any action inconsistent with the specific restrictions of the withdrawals and classifications in effect on January 1, 1981. Thus, activities that would have been permitted on the affected public lands under the previous withdrawals or classifications prior to revocation or termination, may still take place.

The parties focus on this issue with respect to lands classified for multiple use management under the Classification and Multiple Use Act of 1964 (CMUA), 78 Stat. 986 (1964). In particular, they disagree over whether such lands would nonetheless be subject to "disposal." The CMUA required the Secretary of the Interior to classify the public lands for either "disposal" or "multiple use management." Although the Act expired in 1970, the savings provision in the FLPMA extended all existing classifications "until modified under the

---

5. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C.Cir.1983), cited by Mountain States, sheds no light on the present case. In *Naartex*, the plaintiff was seeking directly to cancel a contract involving the absent parties. Furthermore, it was suing on behalf of its own interests in obtaining the contract; it did not raise the issue of the public interest.

provisions of this Act, or other applicable laws." 43 U.S.C. § 1701. In challenging classification terminations, plaintiff ultimately seeks to reinstate prior classifications, developed pursuant to the CMUA, until defendants comply with their statutory obligations. Thus, the parties' dispute necessitates analysis of the classification scheme that the CMUA established.

We agree with plaintiff that the statute itself does not contemplate *disposals* of land when classified for multiple use management. The CMUA equates management for multiple use with *retention.* It commands the Secretary to decide "which lands shall be classified for disposal and which lands he considers to contain such values as to make them more suitable for retention in Federal ownership for interim management ...." 78 Stat. 986, § 1(b). The legislative history confirms this dichotomy between classifications for disposal on the one hand and classifications for retention under principles of multiple use management on the other. *See* S.Rep. No. 1506, 88th Cong., 2d Sess. at 2, *reprinted in* 1964 U.S. Code Cong. & Ad. News 3755, 3756 (Secretary to classify public lands "into at least two broad groups: those subject to disposal and those subject to retention").

In arguing that § 7 of the statute weakens this dichotomy, defendants read too much into the phrase "in accordance with this Act." We disagree that § 7 "obviously" allows the Secretary still to dispose of lands regardless of their classification. We read this provision as merely emphasizing that once the Secretary has classified lands for disposal "in accordance with this Act," nothing in the statute further hampers his power to effectuate the disposals.

By way of further elaboration, the applicable regulations on their face do not contradict the statutory distinction between retention for multiple use management and disposal. To begin with, the regulations also link multiple use management classifications with retention. *See e.g.,* 43 C.F.R. § 2400.0–2 ("retention and management"); § 2400.0–3(j) ("(1) sold ... or (2) retained, at least for the time being, in Federal own-

ership and managed ... ."); § 2429.2 ("Lands may be classified for retention ... if they are not suitable for disposal ... ."). Furthermore, the segregation provisions can be read to harmonize with this two-part framework. Defendants stress the provision keeping open classified public lands to "as many forms of disposal as possible consistent with the purposes of the classification and the resource values of the land." 43 C.F.R. § 2440.2. Defendants suggest that land classified for multiple use management need not be segregated from all forms of disposal and that disposal is proper under such a classification.

This argument, which we suspect reflects much of plaintiff's concern, assumes that "disposal" is necessarily inconsistent with retention in federal ownership. However, the regulations reveal that the term "disposal" covers more than sale or other methods of relinquishing title. A lease, for example, also represents a form of disposal. *See* 43 C.F.R. § 2440.1 ("settlement, location, sale, selection, entry, lease, *or other forms of disposal*" (emphasis added)). A lease might be "consistent with the purposes" of a particular classification for retention for multiple use management. A sale would not. Section 2440.2 thus may simply allow some forms of "disposal" on retained lands which do not undermine Federal ownership.

Similarly, § 2440.3(b) does not necessarily demonstrate that lands classified for multiple use management may be "conveyed out of Federal ownership." Mtn. States Br. at 4–5. The fact that these lands would still be subject to mining "location" does not show that they are also subject to the entire sequence under the mining laws that leads from location to fee ownership. This provision in the regulations weighs only the public interest in the "search" for mineral deposits. It says nothing about private acquisition of property rights.

Although we disagree with defendants' interpretation of the statute and regulations, we are bound by the terms of the individual classifications defendants have created. Plaintiffs have brought this suit

to reverse classification terminations. They have never challenged the terms of the original classifications. In fact, they seek to reinstate the classifications that existed on January 1, 1981. These pre-1981 classifications all outlined their particular segregative effect pursuant to 43 C.F.R. § 2440.1. In some cases the segregation was complete. *See* Mtn. States Ex. A, New Mexico 7633. In others, the segregation provision kept the land open to all forms of "appropriation" except those under enumerated statutes. *See* Mtn. States Ex. A, Montana 944785. It is not clear whether the permissible forms of appropriation included sales or other conveyances of title. However, that issue is irrelevant in the present case. Plaintiffs have asked us to nullify classification terminations since 1981 pending defendants' compliance with the applicable statutes. Plaintiff requests reinstatement, not review. Our order therefore enjoins defendants from "taking any action inconsistent with the *specific* restrictions of a withdrawal or classification in effect on January 1, 1981." (emphasis added). If the specific restrictions of a particular classification condoned some form of "disposal," the terms of the classification again apply.

### III. *Motion to Consolidate*

Plaintiff's motion, filed shortly before the hearing, is now moot. We intend to allow the parties to present their respective cases at a permanent injunction hearing to be held as soon as possible. The attached preliminary injunction order sets a status call to determine the schedule for remaining discovery and any motions that will follow.

Orders consistent with this opinion have been entered this day.