**NATIONAL WILDLIFE FEDERATION, Plaintiff,**

v.

**Robert F. BURFORD, et al., Defendants.**

**Civ. A. No. 85–2238.**

United States District Court, District of Columbia.

Nov. 4, 1988.

Kathleen C. Zimmerman, Norman L. Dean, Jr., Washington, D.C., for plaintiff.

U.S. Dept. of Justice, Fred R. Disheroon, Susan V. Cook, Pauline H. Milius, Jacques B. Gelin, Washington, D.C., for defendants; Office of the Solicitor, U.S. Dept. of Interior, Paul B. Smyth, Richard J. Woodcock, Claire S. Newcomer, Gary L. Bohlke, Michael Jeter, Washington, D.C., of counsel.

Steven R. Ross, Charles Tiefer, Michael L. Murray, Washington, D.C., for intervenor-plaintiff House of Representatives.

Constance Brooks, R. Norman Cramer, Casey Shpall, Denver, Colo., Richard Godown, Tim Haake, Washington, D.C., for defendant-intervenor Mountain States Legal Foundation.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This case, which concerns the status of approximately 180 million acres of public land, was first filed on July 15, 1985, more than three years ago. A brief summary of the ensuing proceedings is appropriate.

On December 4, 1985, this Court granted plaintiff's motion for a preliminary injunc-

tion enjoining any new withdrawal revocations and classification terminations, as well as any activities inconsistent with previous withdrawals and terminations. *National Wildlife Federation v. Burford*, 676 F.Supp. 271 (D.D.C.1985). At the same time we denied plaintiff's motion to dismiss. On February 10, 1986, pursuant to the defendants' motion to clarify, the previous injunction of December 4, 1985 was modified to make it clear that it reached only the federal defendants, not the activities of absent third parties, and was not intended "to overturn or in any way to upset fee interests."[1] *National Wildlife Federation v. Burford*, 676 F.Supp. 280, 284 (D.D.C.1986).

On December 11, 1987, the Court of Appeals for this Circuit in a lengthy split opinion (Judge Williams dissenting), affirmed this court's grant of preliminary relief. *National Wildlife Federation v. Burford*, 835 F.2d 305 (D.C.Cir.1987) (*"Burford"*). It first addressed certain preliminary matters such as the challenge to plaintiff's standing, the effect on absent third parties, plaintiff's failure to exhaust its administrative remedies, and laches. *Burford*, 835 F.2d at 310–18. Passing to the merits, the Court held that the plaintiff had met the conventional criteria for the grant of preliminary relief and sustained the injunction. It conceded that it was a "close case" but held that this court did not abuse its discretion in holding that the plaintiff had shown a likelihood of success on the merits. *Id.* at 319, 327.

On April 29, 1988, in a brief slip opinion, the Appellate Court denied defendants' petition for a rehearing. *National Wildlife Federation v. Burford*, 844 F.2d 889 (D.C. Cir.1988) (*per curiam*). It noted the seriousness of the case and its belief that "some of the criticisms of the breadth and scope of the preliminary injunction offered in the vigorous dissent are not without force." *Id.* at 889. Commenting on the far-reaching effect of this court's action in placing the status of vast tracts of land on "hold" and the confusion arising from this unsettled state of affairs, it expressed its belief "that the disposition of these millions of acres should not continue to rest any longer than necessary on the foundation of a preliminary injunction which was entered *on consideration of the brief affidavits and cursory materials presented to the court below." Id.* (emphasis supplied). We were directed to proceed with this litigation "with dispatch." *Id.* This admonition was repeated by the Court of Appeals as recently as November 1, 1988, when it denied the defendants' emergency motion for a stay pending appeal. *National Wildlife Federation v. Burford*, No. 88–5291, slip op. (D.C.Cir. Nov. 1, 1988) (*per curiam*).

*Present Posture*

At issue is plaintiff's application for a permanent injunction. Pending before the Court are the motion of the defendants to dismiss and motions for summary judgment submitted by both parties. The matter had been extensively briefed.[2] Argument was held on July 22, 1988, at the conclusion of which the parties were directed to submit additional memoranda on the issue of plaintiff's standing to bring this suit. Transcript of July 22, 1988 at 91–2. All parties have responded.[3]

---

1. The December 4, 1985 Order was subsequently amended on November 26, 1986, January 6, 1987, and April 11, 1988 to further limit its reach.

2. Defendants' motion for summary judgment filed September 12, 1986 is 86 pages in length and is accompanied by four declarations of Vincent J. Hecker, Chief, Division of Lands of the Bureau of Land Management (BLM), and the separate declarations of G. William Lamb, District Manager of BLM's Arizona Strip District, Ben Collins, District Manager of BLM's Las Vegas District Office, Ed Hastey, Director of BLM's California State Office, Jack Kelly, Manager of

BLM's Lander, Wyoming Resource Area, and David C. Williams, Chief of BLM's Division of Planning and Environmental Coordination (BLM), as well as voluminous exhibits. Plaintiff's motion, as well as its responses to defendants' motion to dismiss and motion for summary judgment together with exhibits, are also extensive.

3. Plaintiff, in addition to its memorandum filed August 22, 1988 has submitted additional evidentiary material, including declarations from four of its members. These submissions are untimely and in violation of our Order. We decline to consider them. *See* Federal Defend-

*Standing*

In its opinion the Court of Appeals, after applying the "injury in fact" analysis required by Section 702 of the Administrative Procedure Act, concluded that based on the allegations of the complaint, "the Federation has alleged facts sufficient to establish injury in fact to its members." *Burford,* 835 F.2d at 312. In so doing, it pointed out that it had to assume that the allegations of the complaint were true and must be construed in the light most favorable to the organization. *Id.* (citing *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). More importantly, the issue of standing arose in the posture of defendant's motion to dismiss, which affected the degree of factual specificity required to be shown in order to establish the likelihood of personal injury to plaintiff's members. This distinction was emphasized in *SCRAP,*[4] where a suit alleging injury to members based on their use and enjoyment of natural resources was held by the Supreme Court sufficient to survive a motion to dismiss. At the same time, the highest Court acknowledged that, on a motion for summary judgment, the plaintiff might have to show injury with greater specificity. *See SCRAP,* 412 U.S. at 689 & n. 15, 93 S.Ct. at 2416 & n. 15. Our Court of Appeals has more recently spelled out the importance of this distinction. *See Wilderness Society v. Griles,* 824 F.2d 4, 16–17 (D.C.Cir.1987) (Plaintiff's failure to show specificity of injury in response to defendant's motion for summary judgment precludes their standing, but case was reversed to permit plaintiff an opportunity for further discovery on this issue).[5] The Court's affirmance of standing in the instant case must therefore be read in the context of the procedural posture of the case when that Court considered this issue.

The dissenting opinion, while observing that "[a]t this point in the proceeding the issue of standing is largely academic" and that "the defendants appear to have conceded the bare minimum necessary for standing," emphasized that the "specificity required for standing allegations to secure a preliminary injunction will normally be no less than that required on a motion for summary judgment." *Burford,* 835 F.2d at 327–28 (Williams, J., concurring and dissenting). This is because plaintiff's burden of showing likelihood of success on the merits presupposes a preliminary finding that plaintiff has standing. *See id.* at 328. In light of the foregoing, we turn now to reconsider our earlier finding that plaintiff has standing to pursue this litigation. Plaintiff predicates its claim of standing on two types of injury, informational or procedural injury to it as an organization and environmental harm to its members, both caused by defendants' administration of the Land Withdrawal Review Program.[6] Plaintiff's Memorandum in Support of Standing at 2.

Admittedly, the decisions on standing are not a model of consistency. However, it is generally agreed that, in order to satisfy the "case or controversy" requirement of the Constitution and Section 702 of the Administrative Procedure Act, the plaintiff must both plead and prove that it or its members have suffered some actual or threatened injury as the result of defendants' allegedly unlawful conduct. These requirements have been summarized by the Supreme Court in *Valley Forge Christian College v. Americans United for the Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), as follows:

at an irreducible minimum, Art. III requires the party who invokes the court's

---

ants' Reply to Plaintiff's Statement of Points and Authorities in Support of Its Standing to Proceed, at 1 n. 1.

**4.** *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

**5.** The *Wilderness Society* litigation was terminated on October 31, 1988 through the entry of the

"Stipulation of All Parties for Dismissal." The issues in that case were held to be mooted by the passage by Congress on August 16, 1988 of Pub.L. No. 100–395.

**6.** This program concerns the termination of land classifications and the revocation of land withdrawals.

authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1607, 60 L.Ed.2d 66] (1979), and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

█ It is not disputed that an organization may have standing to bring suit on behalf of its members.[7] Plaintiff's claim of injury to it as an organization rests upon its alleged inability 1) to obtain information as to the federal defendants' Land Withdrawal Review Program and the actions completed under such program, and 2) to participate in the federal defendants' decision making. It claims that it, as an organization, is entitled "to see and use" the kind of information that would have been available had the federal defendants completed environmental impact statements. Plaintiff's Statement in Support of Standing at 2–3. In sole support of this position, plaintiff has submitted the declaration of Lynn Greenwall, its Vice President for Resources Conservation. An analysis of the Greenwall declaration shows, after a description of the plaintiff's organization and the nature and size of its membership, the plaintiff's educational program to inform its members concerning conservation issues and their financial support for this purpose, a bare claim that plaintiff's ability to meet the obligations to its members

has been significantly impaired by the failure of the Bureau of Land Management and the Department of Interior to provide adequate information and public participation with respect to the Land Withdrawal Review Program. Plaintiff's Statement in Support of Standing at 5.

It is apparent on its face that the Greenwall declaration is conclusory and completely devoid of specific facts. Plaintiff has the burden of proof on this issue and has failed to make a showing as to the existence of the elements essential to its case, *i.e.,* its lack of adequate information and opportunity for public participation. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It has not done so. Its claim of informational and procedural injury to it as an organization is therefore without merit and provides no basis to support its claim of standing.[8]

█ Plaintiff's other claim of injury concerns alleged environmental harm to its members. Defendants do not challenge the fact that injury to the environment can support a claim of member standing, but rather they focus their attack on the particular showing of injury made in this case. Some useful guidelines have been set forth in *Wilderness Society,* 824 F.2d 4. Both *Wilderness Society* and the instant case concern vast tracts of land[9] and do not involve allegations by a plaintiff that governmental action will be taken against it. Rather, they both concern conduct of a third party whose possible response will injure plaintiff. As was said in *Wilderness Society:*

> The standing question in these three-party cases frequently turns not on the is-

7. To do so, it must meet the three-prong test for representational standing set forth by the Supreme Court. *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). One of these requirements is that one or more of the organization's members has himself standing to sue.

8. Although not required to do so, because defendants did not have the burden to disprove plaintiff's conclusory contention, defendants have advised plaintiff of the environmental documentation and the methodology employed and have made its extensive files containing such

information available for plaintiff's inspection. The fact that no individual environmental impact statements were done in individual classification or withdrawal terminations adds nothing to plaintiff's claim of injury.

9. *Wilderness Society* involved the selection by the State of Alaska of 100 million acres of federal land and Department of Interior's change of policy to exclude submerged lands from the total acreage to be conveyed to Alaska. *See Wilderness Society,* 824 F.2d at 7.

sue of personal injury but rather on so-called causation issues, *i.e.*, whether the third-party's decision is sufficiently dependent upon governmental action that the plaintiff's injury is "fairly traceable" to that action and is "likely to be redressed" by an order binding the government.... [citing *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) and other cases] When personal injury *is* at issue in a three-party case, it usually depends upon how likely it is that the third-party's response to the challenged governmental action will injure the plaintiff *at all.*

824 F.2d at 11 (citations omitted).

The Court in *Wilderness Society* concluded its discussion of this problem with the following language which is particularly relevant to the facts of the instant litigation:

> To sum up, whether an allegation of threatened injury suffices for standing turns on the likelihood of the occurrence of that injury.... [T]he court must ascertain whether the third party's response to governmental action will ... affect the plaintiff's intended behavior. Where the alleged injury involves access to land in a three party case, as in *Sierra Club [v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)], *SCRAP,* and the case at bar, the judgment regarding the likelihood of injury turns on *whether the plaintiff's future conduct will occur in the same location as the third party's response to the challenged governmental action.* Otherwise, the threat of injury would be too amorphous or uncertain; it would be no greater for the plaintiff than for any person simply opposed to the governmental action in question. In short, the issue in each case is whether the plaintiff has put forward enough facts to show that his intended behavior will be injured as a

direct or indirect result of the challenged governmental action.

*Wilderness Society,* 824 F.2d at 12 (emphasis supplied).

Plaintiff rests its entire claim of standing to sue for environmental injury on the affidavits of two persons, *i.e.,* Peggy Peterson and Richard Erman. Both of their brief affidavits were filed on May 22, 1986.[10] Neither appears to be referred to in plaintiff's Motion for Summary Judgment filed on June 23, 1986, which does not consider the question of plaintiff's standing.

The Peterson affidavit claims that she uses federal lands *in the vicinity* of the South Pass–Green Mountain area of Wyoming for recreational purposes and for aesthetic enjoyment and that her recreational and aesthetic enjoyment has been and continues to be adversely affected as the result of the decision of BLM to open it to the staking of mining claims and oil and gas leasing. Peterson Affidavit, filed May 22, 1986. This decision[11] opened up to mining approximately 4500 acres within a two million acre area, the balance of which, with the exception of 2000 acres, has always been open to mineral leasing and mining. *See* Kelly Affidavit attached to Federal Defendant's Motion for Summary Judgment filed September 4, 1986.[12] There is no showing that Peterson's recreational use and enjoyment extends to the particular 4500 acres covered by the decision to terminate classification to the remainder of the two million acres affected by the termination. All she claims is that she uses lands "in the vicinity." The affidavit on its face contains only a bare allegation of injury, and fails to show specific facts supporting the affiant's allegation.

The Erman Affidavit is similarly flawed. Erman asserts that he uses federal lands, including those in the vicinity of the Grand Canyon National Park, the Arizona Strip

---

**10.** They are 3 and 3–½ pages in length, respectively, and use the same boiler plate language and format.

**11.** Termination of Classification No. W–6228 referred to in Federal Defendants' Motion for Summary Judgment, Statement of Facts at 6.

**12.** The Kelly Affidavit sets forth in great detail the voluminous process started in 1977 and concluded in 1984 that the BLM office in Lander, Wyoming followed in reaching its decision to terminate Classification No. W–6228. It completely answers plaintiff's claims of inadequate land use plans, lack of conformance determinations and insufficient opportunities for public participation.

(Kanab Plateau), and the Kaibab National Forest for recreational purposes and for aesthetic enjoyment. He further asserts that his recreational use and aesthetic enjoyment of federal lands, particularly those *in the vicinity* of the Grand Canyon National Park and the Arizona Strip have been and continue to be adversely affected in fact by the unlawful actions of the Bureau and the Department, with particular reference to the opening to the staking of mining claims and the failure of the Bureau and the Department to provide notice of their proposals to terminate classifications and other withdrawals and to provide opportunities for public involvement. Erman Affidavit filed May 22, 1986. The magnitude of Erman's claimed injury stretches the imagination. As the affidavit of J. William Lamb shows, the Arizona Strip consists of all lands in Arizona north and west of the Colorado River on approximately 5.5 million acres, an area one-eighth the size of the State of Arizona. Furthermore, virtually the entire Strip is and for many years has been open to uranium and other metalliferous mining. The revocation of withdrawal concerned only non-metalliferous mining in the western one-third of the Arizona Strip, an area possessing no potential for non-metalliferous mining. *See* Lamb Affidavit, attached to Federal Defendant's Motion for Judgment.[13]

Both the Peterson and Erman Affidavits are vague, conclusory and lack factual specificity. They do not and cannot show "injury in fact" with respect to the two specific areas in Wyoming and Arizona in the vicinity of which these affiants claim to be located. More important, standing alone, these two affidavits do not provide any basis for standing to challenge, as violative of the Federal Land Policy Management Act, the legality of each of the 1250 or so individual classification terminations and withdrawal revocations. It should be noted that plaintiff's claims of injury reach hundreds of decisions affecting 180 million acres spread over seventeen states. Since

plaintiff lacks standing in the constitutional sense or as an "aggrieved party" under Section 702 of the APA, we lack subject matter jurisdiction and dismiss for lack of standing.

*Merits*

In view of the position taken that this Court lacks jurisdiction for lack of standing, it is not necessary that we reach the merits of plaintiff's claim for injunctive relief. The dissenting opinion of the Court of Appeals has mirrored many of these problems in its discussion of our grant of preliminary injunction presented as it was in response to defendant's motion to dismiss.

An Order consistent with the foregoing has been entered this day.

### ORDER

Upon consideration of the parties' respective motions for summary judgment and oppositions thereto, the hearing thereon held July 22, 1988, and the parties' subsequent submissions on the issue of plaintiff's standing, it is by the Court this 4th day of November, 1988

ORDERED that this Court's grant of a preliminary injunction be vacated, and it is

ORDERED that Defendants' Motion for Summary Judgment be granted; and it is

FURTHER ORDERED that the above action shall stand dismissed for lack of standing.

---

**13.** The Lamb Affidavit also details the history of the several withdrawals and classifications placed on the public lands comprising the Arizona Strip. These commenced in 1930 and were terminated in 1981 after the passage of the Federal Land Policy and Management Act, 43 U.S.C. § 1701, *et seq.*